IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OTAGWYN BROWN, #367376      *
        Plaintiff,
    v.      *      CIVIL ACTION NO. ELH-16-3808

C.O. SHARON SKELLY[1]      *
C.O. JOSHUA TART
C.O. JUSTIN L. ADAMS      *
        Defendants.
                         *****

**MEMORANDUM OPINION**

Otagwyn Brown, the self-represented plaintiff, is a State inmate currently confined at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. On November 22, 2016, he filed a civil rights suit against NBCI Correctional Officers Sharon Skelly, Joshua Tart, and Justin Adams. ECF 1. He alleges, *inter alia*, a violation of the Eighth Amendment, on the ground that the defendants "interfere[d] with the medical care" that had been ordered for him. *Id.* at 4.[2] Brown seeks injunctive relief as well as compensatory and punitive damages. *Id.* at 3, 9.

Defendants have moved to dismiss or, in the alternative, for summary judgment. ECF 13. The motion is supported by a Memorandum (ECF 13-1) (collectively, the "Motion") and exhibits, including declarations and medical records. ECF 13-2 to ECF 13-7. Brown opposes the Motion (ECF 19), and has filed a memorandum (ECF 19-1) (collectively, "Opposition") and exhibits. ECF 19-2 to ECF 19-5. Defendants have replied (ECF 21, "Reply") and submitted another declaration. ECF 21-1.

---

[1] The docket shall be corrected to reflect the correct surname of this defendant as Sharon Skelly, not Skully.

[2] All references to docket entries reflect their electronic pagination.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendants' Motion, construed as a motion for summary judgment, shall be denied.

## I. Factual Background

Brown complains that he suffers from scoliosis of the lumbar spine and degenerative changes to the thoracic and lumbar regions of the spine. Due to his conditions, on February 18, 2014, a prison physician issued a medical assignment order directing that plaintiff be provided with a bottom bunk. ECF 1 at 3, 4. He states that the conditions cause him to experience symptoms such as spasms and acute pain. Brown alleges that this medical order was disregarded, and in May and June of 2014, he was required, on multiple occasions, to move to other cells, where he was assigned to a top bunk. He contends that he informed Correctional Officers Sharon Skelly, Joshua Tart, and Justin Adams of the physician's order, but they did not contact medical personnel to verify his medical status and viewed his comments as "bulls—t." Brown asserts that on June 11, 2014, he fell as he was attempting to move from the top bunk and required emergency care at an area hospital. *Id*. at 5-8.

Defendants indicate that "bottom bunks are highly sought after by inmates," because inmates "consider bottom bunk assignments as optimal for reasons of comfort and relative freedom of movement." ECF 13-2 (Decl. of William Beeman, NBCI's Assistant Director of Nursing), ¶¶ 2, 5. They affirm that they became aware of a practice of NBCI inmates forging Medical Housing Assignment Forms to obtain bottom bunk assignments. ECF 13-2 (Beeman Decl.); ECF 13-3 (Skelly Decl.); ECF 13-4 (Tart Decl.); ECF 13-5 (Adams Decl.). Further, they maintain that NBCI inmates so frequently forged orders for medical assignments to bottom bunks that, in November of 2011, the Medical Department began to affix an embossed seal on

their orders to distinguish authentic orders from inmate forgeries. ECF 13-2, ¶ 5. William Beeman, the Assistant Director of Nursing at NBCI, avers that Brown's medical assignment order of March 14, 2014, does not have the embossed seal. ECF 13-2, ¶ 8; *see also* ECF 13-2 at 4 (Housing Assignment).

Defendants acknowledge that they escort inmates to their assigned cells, but they claim that they lack authority to assign inmates to particular cells or bunks. Moreover, they deny that they intentionally interfered with, denied, delayed contradicted, or hindered the implementation of any valid medical order for Brown to be assigned to a bottom bunk. ECF 13-3; ECF 13-4; ECF 13-5.

According to defendants, on November 21, 2013, while Brown was housed at NBCI, he was moved from a bottom bunk to a top bunk. ECF 13-6 (Decl. of CO II Kevin Gurtler), at 6. Fourteen days later, on December 5, 2013, Brown submitted a sick-call request, reporting that on December 4, 2013, he fell when he "jumped" down from the top bunk and then slipped in water on the floor and hit his "Butt Bone on the toilet." ECF 13-7 (medical records), at 2. On December 8, 2013, Brown was seen by Registered Nurse ("RN") Carla Buck, who prescribed Motrin. *Id.* at 14. He declined to be seen on December 11, 2013. *Id.* at 16. On December 24, 2013, Brown was seen by RN Kristi Cortez for complaints related to seasonal allergies, as well as back and right leg discomfort attributable to his fall on December 4, 2013. *Id.* at 17-2, 19. Brown was provided with a muscle rub. *Id.* at 19.

Plaintiff was seen by Colin Ottey, M.D., for an urgent care visit on February 14, 2014, claiming he fell from the top bunk on that date. *Id.* at 20. He complained of pain in his mid-lower back and reported no sensation in his lower extremities. He was admitted to the infirmary and radial examinations of the lumbar spine, sacrum, and coccyx were ordered. *Id.* at 20-27.

3

Brown filed a sick-call slip on March 6, 2014, again complaining of lower back and tail bone pain, with severe spasms in his left leg since he fell from his bunk on February 14, 2014. *Id*. at 7. Another sick-call slip was submitted on March 15, 2014. *Id.* at 8.[3]

On June 11, 2014, Brown was apparently found on the floor of his cell "with an observed fall." *Id.* at 30. He was seen by a nurse, placed in a cervical collar on a back board, and transported to a hospital, where he was examined and CT and MRI tests (spinal cord) were conducted. The CT report was negative for fracture and the MRI report was negative for fracture of the spine. No contusion or hematoma was observed  Brown was able to stand and take several steps; no leg weakness was detected. ECF 13-7 at 30-38. He was transported back to the prison infirmary, where he was seen by RN Schultz on June 12, 2014. Brown denied numbness or tingling of his extremities and related that he was climbing down off the top bunk when he slipped and fell and hit his back on a chair. *Id*. at 39-41. He was released from the infirmary to general population that same date. *Id*. at 42.

Brown was seen by Ava Joubert, M.D. on June 16, 2014, requesting the continuation of his Baclofen and his assignment to a bottom bunk. The musculoskeletal examination was normal. Baclofen and Ibuprofen were to be continued until June 26, 2014, and Brown was given a written regimen sheet for back exercise. *Id*. at 45-46. When Brown was seen by Nurse Practitioner Janette Clark on July 22, 2014, for his complaint of back pain and request for a medical assignment, Clark found the back pain condition to be stable, as Brown indicated that he could walk up and down the stairs, exercise, kneel, put on socks and shoes, walk an unlimited distance, and perform daily activities of daily living. Clark found no indication for bottom bunk status. *Id*. at 47-49.

---

[3] The medical records contain various other sick-call requests, generally for reasons unrelated to the issue of bunk assignment. Therefore, I have not referenced them.

In Brown's Opposition, supported by his own Affidavit and exhibits, Brown claims that he was assigned bottom bunk housing status by Dr. Ottey initially on February 14, 2014, due to his scoliosis and degenerative back disease. ECF 19-1 at 2, 3. He contends he was issued an authentic medical housing assignment and this was acknowledged in the defendants' own exhibits. *Id.* at 1. The bunk assignment was renewed by Dr. Ottey on March 14, 2014. *Id.* at 2. Brown has provided two copies of the medical order of March 14, 2014, in an apparent effort to show that the physician's order was properly embossed. ECF 19-4.

Brown maintains that he informed and showed the correctional officers the physician's order and his medical status and that at no time did the defendants take action to determine if the medical assignment order (which was embossed) was falsified or forged. Moreover, he asserts that he was never accused of fraudulently forging a medical assignment nor adjudicated of doing so. ECF 19-1 at 2, 3.

Further, Brown contends that none of the defendants followed prescribed protocol relevant to verifying a prisoner's medical status as to housing assignments, and the correctional officers substituted their own "unqualified opinion as to [his] need for the special housing assignment." *Id.* Brown maintains that Ottey's medical order, which was validated by his administrative remedy procedure grievance and the decision of the Administrative Law Judge ("ALJ"), was subject to "callous disregard" by defendants, resulting in his fall from his top bunk and his transportation to a hospital emergency room. ECF 19-1 at 3; *see* ECF 19-3;[4] ECF 19-5.

---

[4] Brown attached the ruling of the ALJ, who found that Brown had a valid medical order to be housed only in a bottom bunk; between May and June of 2014, he was reassigned three times in NBCI Housing Unit No. 2, and all three times he was assigned to a top bunk. The ALJ concluded that Brown has an existing back condition, he fell from his top bunk on June 11, 2014, and suffered a contusion of his back; he previously notified correctional officers of his medical bunk assignment, either verbally or by furnishing them with a copy of his medical order; the obligation to be informed of inmates' medical orders lies with the Division of Correction, not the

5

Further, Brown takes issue with the defendants' asseverations that his medical order was authentic because it was not embossed, stating that "if a photocopy of the document is made the ridges of an embossed seal would not show as much." ECF 19-1 at 8. He maintains that there are material facts that are in dispute. *Id.* at 8, 10.

Brown's Affidavit affirms that his medical order for bottom bunk status was not a forgery and photocopies used at NBCI do not preserve the three dimensional ridges that are part of an embossed seal. He maintains that, according to prison protocols, traffic personnel and housing unit staff are to be provided with copies of a medical assignment order. ECF 19-2. Brown states that he cannot prove what "defendants Skully, Tart, and Adams said, or what I showed them without the court allowing me" to engage in discovery to obtain prison policies, manuals, video archive surveillance, and prisoner declarations. *Id*. at 4.

In their Reply, defendants claim that the issue before the court is whether they acted with deliberate indifference with respect to a genuine medical order when none was presented to them. ECF 21.

## II. Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 13. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider

---

inmates, and awarded him $100.00 in monetary damages. ECF 19-3.

matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638 (4th Cir. 2016); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the

7

grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs.*, LLC, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs.*, *Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006),.

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit...is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary

judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair,* 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Brown claims that discovery is necessary as it will "allow [him] to acquire materials …that can be considered by the court in light of what defendants assert…" ECF 19-1 at 10. In his Affidavit (ECF 19-2), submitted pursuant to Rule 56(d), he seeks to review surveillance videos, medical protocol manuals, and other documents. *Id.* at 4. It is not abundantly clear, however, why Brown believes these documents would be relevant to his ability to respond to defendants' responsive pleading and, in light of the court's subsequent findngs, I see no need to allow discovery at this time. Nonetheless, I am satisfied that it is appropriate to address defendants' Motion as one for summary judgment, because it will facilitate the progression of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the

9

mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Sharif v. United Airlines, In*c., 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club*, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The nonmoving party must demonstrate a dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law.").

The court must "view the evidence in the light most favorable to...the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017);

*Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). In other words, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC,* 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a genuine dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because Brown is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d

11

774, 778–79 (4th Cir. 1993), and citing *Celotex Corp.*, 477 U.S. at 323–24).

## III. Discussion

Brown alleges a violation of his rights under the Eighth Amendment to the Constitution. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. at 106; *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.

Recently, the Fourth Circuit observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Thompson*, 878 F.3d at 97. The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*,

511 U.S. at 834, 837-38).[5]

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A "'serious ... medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires a determination as to whether the defendant acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Farmer*, 511 U.S. at 839-40. As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (citation omitted). Although this "'entails more than mere negligence ... it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id*. (quoting *Farmer*, 511 U.S. at 835).

In order "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the

---

[5] Conversely, in excessive force cases, "courts must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Thompson*, 878 F.3d at 98 (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)).

inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178. In other words, deliberate indifference requires a showing that the defendant disregarded a substantial risk of harm to the prisoner. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). As the *Farmer* Court explained, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, "[a]ctual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). But, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice*, 58 F.3d at 105.

As indicated, the Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178. Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.; Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it ... [T]he

Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences ... To lower this threshold would thrust federal courts into the daily practices of local police departments."). Therefore, mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble, supra*, 429 U.S. at 106). Moreover, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). In *Scinto*, the Fourth Circuit said, 841 F.3d at 226:

> A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official ... had been exposed to information concerning the risk and thus must have known about it...." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114 S.Ct 1970). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. However, even officials who acted with deliberate indifference may be "free from liability if they responded reasonably to the risk." *Farmer*, 511 U.S. at 844.

Even if the requisite subjective knowledge is established, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

The existence of factual issues "that properly can be resolved only by a finder of fact because they may not reasonably be resolved in favor of either party," precludes the entry of summary judgment. *See Anderson*, 477 U.S. at 250 ("Credibility determinations ... are jury functions, not those of a judge...."). Further, if the actions of defendants occurred in the manner alleged by plaintiff, qualified immunity would not apply.

Here, there are genuine disputes of material fact regarding the authenticity of Brown's medical assignment order, as well as how and what information was communicated to defendants regarding Brown's bunk assignment. Brown's Opposition has adequately refuted defendants' filings, so as to put these facts in dispute. Such disputes must be resolved by the trier of fact.

## IV. Conclusion

For the aforementioned reasons, defendants' Motion, construed as a motion for summary judgment, will be DENIED. Brown shall be granted the appointment of counsel.

A separate Order follows.


Date: February 21, 2018            _____/s/_____
                                   Ellen L. Hollander
                                   United States District Judge